UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL VISIONS, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EC GROW, INC.,<br><br>　　　　Defendant.<br>and<br>EC GROW, INC.,<br><br>　　　　Counter-Plaintiff,<br><br>　v.<br><br>CRYSTAL VISIONS, INC. and SALT XCHANGE, INC.,<br><br>　　　　Counter-Defendants. | No. 17 CV 7490<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

EC Grow, Inc., uses the mark "LIGHTNING FAST" for its ice-melt product and it claims that Crystal Visions, Inc., is infringing on the mark by using its own, "LIGHTNING PREMIUM ICE MELTER." Crystal Visions brought this suit against EC Grow for declaratory judgment of non-infringement, and in response, EC Grow brought counter-claims against Crystal Visions and its partner company, Salt Xchange, Inc. EC Grow and the counter-defendants filed cross-motions for summary judgment on EC Grow's counterclaims of infringement and unfair competition. Both

motions brief the issue of likelihood of confusion between the two products. EC Grow's motion is denied, and counter-defendants' motion is granted.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine dispute over a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that the summary judgment standard is met, but the non-movant must show evidence to establish every element of its claim for which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). I construe the facts in the light most favorable to the non-movant and draw reasonable inferences in its favor. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018). The summary judgment standard is no different when considering cross-motions. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). I don't have to grant one motion or the other—I can deny both if neither meets the standard. I am free to consider evidence submitted with respect to one motion when considering the other. *Torry v. City of Chicago*, 932 F.3d 579, 584 (7th Cir. 2019).

## II. Background

### A. Local Rule 56.1

The importance of Local Rule 56.1 is too often overlooked by litigants. The rule is essential to the fair and efficient disposition of summary judgment motions, and parties can be strictly held to it. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th

Cir. 2015) (collecting cases). Responses to statements of material facts are not the place for legal argument or quarrels about characterizations of the facts—that is what briefs are for. A party's sole options are to admit or dispute a fact, and any dispute must be accompanied by specific supporting references in the record. *See* L.R. 56.1(a)(3), (b)(3)(B). Any fact that is not properly disputed and controverted is admitted. *See* L.R. 56.1(a)(3), (b)(3)(C).

Take, for example, counter-defendants' response to EC Grow's asserted fact that its trademark was granted incontestable status in July 2014. [87] ¶ 13.[1] Their response is this: "Admit, but should be considered in the context of Additional Fact ¶¶ 7–9." [87] ¶ 13. "Admit, but" or "not disputed, but" responses are not allowed. If a party admits a fact, then it is admitted. The additional context counter-defendants want me to consider must be asserted in a separate, additional fact (as they properly did) and then argued in the briefing. EC Grow is guilty of this type of response too. *See, e.g.*, [90-1] ¶ 23. Facts responded to in that way are deemed admitted.

### B. Facts

EC Grow makes and sells ice melt using the trademark "LIGHTNING FAST." [87] ¶¶ 1, 14. It chose "lightning" to describe the product as "working quickly." [101-1] ¶ 8. EC Grow registered the mark in 2008 and claimed the date of first use as September 10, 2007, for "chemical compounds used to melt ice and snow." [87] ¶ 13.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. Facts are taken from the parties' responses to each other's statements of material facts, where both the original facts and the responses are in one document. [87]; [90-1]; [95-1]; [101-1]. To the extent this opinion refers to matters filed under seal, the seal is lifted. Confidentiality for purposes of discovery is not a reason to conceal information relied upon in judicial decisionmaking.

It was granted incontestable status in 2014. [87] ¶ 13. EC Grow's ice melt is a granular blend of calcium chloride, magnesium chloride, and sodium chloride that is enhanced with AMC, and it melts to negative 15 degrees Fahrenheit. [87] ¶ 14. The pellets are blue and sold in 50-pound bags and 1,000-pound "super sacks." [87] ¶¶ 14–15.

Crystal Visions and Salt Xchange make and sell ice melt too. [87] ¶¶ 2–3. They are separate entities, but they share a president (and some employees and contractors), and they hold themselves out as public partners. [87] ¶¶ 5–6, 12; [101-1] ¶ 1. Crystal Visions manufactures packaged ice melt products, and Salt Xchange manufactures bulk ice melt products, but the two buy each other's products and resell them. [87] ¶¶ 9–11; [101-1] ¶ 1.

In 2016, Crystal Visions applied for registration of the "LIGHTNING PREMIUM ICE MELTER" mark, and the mark was registered in 2017, claiming a date of first use as July 1, 2011, for "anti-freezing and de-icing preparations." [87] ¶ 16. The U.S. Patent and Trademark Office required it to disclaim the "PREMIUM ICE MELTER" part. [87] ¶ 18. Both Crystal Visions and Salt Xchange make and sell their ice melts under the "LIGHTNING PREMIUM ICE MELTER" mark. [87] ¶¶ 19–21. Both partner companies' products are made of sodium chloride that is treated with magnesium chloride, an organic carbohydrate, and a corrosion inhibitor. [87] ¶¶ 19, 21. Both companies' products are aqua-colored pellets that melt to negative 20 degrees Fahrenheit. [87] ¶¶ 19, 21. Crystal Visions sells its packaged product in 25-pound and 50-pound bags and 2,000-pound "super sacks." [87] ¶ 20.

4

EC Grow (left) and Crystal Visions's (right) packaging look like this:

 

[87] ¶ 26.

EC Grow, Crystal Visions, and Salt Xchange sell their ice-melt products to three kinds of buyers—professional companies who use the products themselves, professional companies who resell the products, and retailers. [87] ¶¶ 36–37. All of Salt Xchange's sales and nearly all of Crystal Visions's sales are to professional and business customers, as are between 70 and 80 percent of EC Grow's sales. [90-1] ¶¶ 27, 29, 31; [101-1] ¶ 2. These customers are sophisticated, and they typically make their purchases through discussion and negotiation with the parties. [101-1] ¶¶ 3, 10. Resellers sell to end customers that can include other business, like snow removal or landscape companies. [95-1] ¶ 24. These businesses buy anywhere from a pallet to a truckload of ice melt, and they usually generally know what they're looking for in an ice melt product (or the resellers educate them about the features). [95-1] ¶ 24.

Crystal Visions has sold its product to Ace Hardware and a company that supplied the product to Home Depot. [87] ¶¶ 39–40.

All three companies market their products by directly contacting potential customers and offering their products for sale online. [87] ¶¶ 33–34. EC Grow and Crystal Visions sell to three of the same customers, and Crystal Visions has directly marketed to two of EC Grow's customers and identified others as potential customers. [87] ¶¶ 30–32. EC Grow and Crystal Visions also both belong to a business cooperative, and even appeared in side-by-side booths at a trade show. [87] ¶ 35. Photos of EC Grow's and Crystal Visions's products appeared near each other in a magazine once, when two wholesalers advertised their products in back-to-back advertisements—one showed a number of ice melt bags that included EC Grow's product, and the ad on the opposite side of the page was a different wholesaler showing a photo of two ice melt bags, one of which was Crystal Visions's. [87] ¶ 38.

Sometime in 2016 or 2017, an EC Grow employee received a call from a customer in Washington who had complaints about her "Lightning" ice melt product. [87] ¶ 46.[2] EC Grow employee determined that the product the woman had was Crystal Visions's ice melt, not EC Grow's. [87] ¶ 46.

---

[2] Counter-defendants argue that this is inadmissible hearsay. The statement is not offered to prove the assertion that the customer's driveway was damaged by the product or that the customer searched for "lightning" and found EC Grow. Instead, it is offered as background for the EC Grow employee's assessment—based on his personal knowledge—that he received a call from someone who had confused Crystal Visions with EC Grow. *See Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *10 (N.D. Ill. Mar. 28, 2017) ("These statements are not hearsay because they are 'not offered to prove the truth of the customer's assertion that there is a connection or affiliation between the parties, but only to prove the confused state of mind of the customer.'" (citations omitted)).

### III. Analysis

To prevail on a claim for trademark infringement or unfair competition under the Lanham Act, EC Grow must prove "that (1) its mark is protectable and (2) the [counter-defendants'] use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001).[3] There is no dispute that EC Grow's mark is protectable, so the question is whether consumers who would use either product are likely to attribute them to the same source. *Bd. Of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011). To answer that question, I consider seven factors—"(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). None of the factors alone are dispositive, but the similarity of the marks, the defendant's intent, and actual confusion are usually the most important. *Id.*

Before delving into the factors, there are two threshold issues in need of resolution. First, counter-defendants say that their summary judgment motion is directed only to the parties' professional and business consumers, "not to the small portion of retail customers to whom these products are also sold." [63-2] at 7–8. EC

---

[3] EC Grow also bring claims for violation of Illinois Uniform Deceptive Trade Practices Act and common law unfair competition. The same analysis applies to those claims. *See Joshi v. Joshi*, No. 18 C 5426, 2019 WL 3554388, at *3 (N.D. Ill. Aug. 1, 2019).

7

Grow objects to excluding those retail customers. [90] at 7–8. I agree that, while counter-defendants may elect to move for partial summary judgment, they cannot exclude the retail customers from the analysis of the likelihood of confusion arising from EC Grow's motion, because they are relevant to the buyer class. Counter-defendants have cited no authority stating otherwise.

The second issue is that EC Grow treats Crystal Visions and Salt Xchange as one. The counter-defendants argue that they are separate entities and should be treated as such. Indeed, that's the presumption (and one of the main points of corporations). *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015) ("The core principle of corporate law is that a corporation is a distinct legal entity, separate from its shareholders, directors, officers, and affiliated corporations."). In response, EC Grow claims that Crystal Visions and Salt Xchange are impossibly intertwined, but it offers no reason or legal authority for why that matters here. [101] at 7. Without a better reason to collapse two separate entities into one, I address them separately.

### A. Crystal Visions

"[M]arks are troublingly similar if a consumer viewing one party's mark would likely associate the product with the other party's product." *Uncommon*, 926 F.3d at 425–26. The analysis must be done "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (citation omitted). I consider similarity by looking not

just at the marks themselves but the entire labels. *Id*. at 726.[4] The labels are similar in some respects but different in more important ones. Both labels use gray and blue colors. But EC Grow's label uses more of a royal shade of blue and includes yellow accents, while Crystal Visions uses aqua and has no yellow accents. The fonts are very different, with Crystal Visions using a lightning-bolt style "N" in its packaging. Both labels feature images of lightning, but EC Grow's lightning strikes prominently down the center against a solid blue background, while Crystal Visions's lightning is fainter and more diffuse, appearing above a mountainous landscape. Even viewing the evidence in EC Grow's favor, a juror could not find that the marks are troublingly similar—the consumer in the marketplace (most often professional or business consumers) would not associate EC Grow's product with Crystal Visions's, or vice versa. This factor favors Crystal Visions.

The strength of EC Grow's mark also favors Crystal Visions. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. The parties disagree about whether EC Grow's use of "lightning" is a descriptive or suggestive mark—suggestive marks are more distinct. *Id*. A descriptive mark describes the product or an important characteristic of the product, and a suggestive mark "requires the observer or listener to use imagination and perception

---

[4] Counter-defendants point out that EC Grow admitted that its packaging looks "very different" from Crystal Visions's packaging and that a customer wouldn't get confused between them. [90-1] ¶ 36. That EC Grow doesn't think they are similar or confusing is probative, but not dispositive of the issue of similarity.

9

to determine the nature of the goods." *Uncommon*, 926 F.3d at 421–22 (citations omitted). EC Grow's "LIGHTNING FAST" mark is descriptive, since it describes the fast-working nature of the product. There is no evidence that EC Grow has economic and marketing power, which further undermines the mark's strength. *See id.* at 426.[5]

The similarity of the products and the area and manner of concurrent use tilt toward EC Grow's claim of infringement. The parties' ice melts are products that "in the minds of consumers, might be put out by a single producer." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008). Crystal Visions's pellets are a different shade of blue, but there's no evidence that color is a basis for consumers in the marketplace to differentiate sources. EC Grow and Crystal Visions share customers and target their customers in similar ways, which is sufficient to show that the parties "use the same channels of commerce, target the same general audience, [and] use similar marketing procedures." *Sorensen*, 792 F.3d at 730.

Next is the degree of care consumers are likely to use, and the parties disagree about which consumers should set the standard. EC Grow argues that "when a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1043 (N.D. Ill. 2001) (quoting *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 293 (3d Cir.

---

[5] Counter-defendants also point out that lots of companies use "lightning" marks, including two other ice melt companies, but that point is worth little absent evidence that those marks "have been promoted or become recognized by consumers in the marketplace." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2008).

1991)). So, it says, the appropriate standard is "the consumer who is shopping for ice melt in a hardware, garden, or home improvement store." [79-2] at 18. But counter-defendants argue that the appropriate standard is the ordinary consumer (here, professionals and businesses), since "it would be undesirable to impoverish the lexicon of trade names merely to protect the most gullible fringe of the consuming public." *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997) (citation omitted). Although the Seventh Circuit has not expressly adopted the "least sophisticated consumer" test, its reference to excluding the "gullible fringe" is not inconsistent with the notion that likely confusion among actual, regular consumers of products—where some consumers are less sophisticated than others—is relevant. *See Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991) (trademark law protects the entire gamut of purchasers, including retail consumers and members of the trade); *see* also 4 McCarthy on Trademarks and Unfair Competition § 23:100 (5th ed.) ("Where a product is sold both to consumers and to wholesalers and retailers, the issue of likelihood of confusion will usually revolve around the less knowledgeable consumer.") There is evidence that Crystal Visions's product reached retail consumers (the sales to Ace Hardware and Home Depot). Someone shopping for a bag or two of ice melt at the store is unlikely to exercise much care. That lack of care by retail customers weighs in favor of EC Grow, because consumers who do not pay attention could be confused—but remember that all factors must be considered together, and careless retail shoppers are also

unlikely to associate the weak descriptive mark "Lightning Fast" as a source identifier.

Evidence that consumers are actually confused isn't necessary to prove a likelihood of confusion, but the evidence weighs heavily when it exists. *See CAE*, 267 F.3d at 685. EC Grow believes one customer mixed up its product with Crystal Visions's. One customer is not much, but "[o]ne instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion." *Id*. at 686.

Finally, there is no evidence that counter-defendants are intentionally trying to pass off their products as EC Grow's. EC Grow hasn't even pointed to evidence that Crystal Visions knew about its mark before creating its own. That a third party knew of the mark and that the Crystal Visions's president had visited and heard of EC Grow (which also makes fertilizer) does not prove that Crystal Visions knew of the mark, even if EC Grow finds that "hard to believe." [90] at 19. Even if it did know about EC Grow's mark, "[m]ere knowledge of someone else's mark is insufficient to show intent to pass off." *Sorensen*, 792 F.3d at 731.

At bottom, the factors are a means to consider the ultimate question of "whether consumers who might use either product would likely attribute them to a single source." *Uncommon*, 926 F.3d at 425. Summary judgment can only be granted "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *AutoZone*, 543 F.3d at 929 (citation omitted). The marks are not troublingly similar, there was no intent to pass off Crystal Visions's product as EC Grow's, and EC Grow's mark is merely descriptive without source-identifying

marketing power. So, although the products are similar, the companies operate in the same channels of commerce, one person was actually confused, and retail consumers may not exercise care when selecting ice melt, a jury could not find that consumers are likely to attribute these products to a single source. *See Uncommon*, 926 F.3d at 427 (district courts may weigh the seven factors on a motion for summary judgment and the presence of some factors in favor of appellant does not necessarily defeat summary judgment). Crystal Visions is entitled to summary judgment on the issue of likelihood of confusion.

### B. Salt Xchange

The confusion factors are easily applied to Salt Xchange. There is no evidence of what Salt Xchange's labels look. Nor is there evidence that Salt Xchange sells to ordinary, unsophisticated consumers (the Ace Hardware and Home Depot evidence applied only to Crystal Visions), that consumers are actually confused, or that Salt Xchange intends to "palm off" its product as EC Grow's. And, as I explained above, EC Grow's mark is not strong. Even assuming that the similarity of the products and the area and manner of concurrent use weigh in favor of EC Grow, that is not enough to allow a reasonable factfinder to find a likelihood of confusion. Salt Xchange is entitled to summary judgment in its favor.

## IV. Conclusion

EC Grow's motion for summary judgment [79] [80] is denied. Counter-defendants' motion for summary judgment [63] [64] is granted. The parties shall

appear at a status hearing to address the remaining claims that were not subject to the cross-motions. A status hearing is set for September 17, 2019, at 9:30 a.m.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: September 3, 2019